(151 App. Div. 297.)

WILCOX v. SUPREME COUNCIL OF ROYAL ARCANUM.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. JUDGMENT (§ 518*)—"COLLATERAL ATTACK."

An action or proceeding having an independent purpose and contemplating some other relief than the setting aside of a prior judgment, though the setting aside of it may be necessary to the success of the action, is a collateral attack on the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 961, 962; Dec. Dig. § 518.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. INSURANCE (§ 747\*)—COLLATERAL ATTACK.**

Where a member of a beneficial association was wrongfully expelled, and he carried his appeal within the order as far as possible and died before he could bring to trial a proceeding for mandamus to compel reinstatement, the judgment of expulsion was not conclusive in an action by the beneficiary on the certificate, in which it was sought to show that the tribunal which expelled was not properly constituted to try the charges, though such a showing was a collateral attack on the judgment of expulsion.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1892; Dec. Dig. § 747.\*]

**3. INSURANCE (§ 815\*)—FRATERNAL INSURANCE—ACTIONS—ISSUES.**

Where, in an action on a fraternal beneficiary certificate, the pleadings of the parties presented the issues whether the expulsion of the member was wrongful, and his effort to appeal within the association, and his death before bringing to trial mandamus to compel reinstatement, the court had jurisdiction to determine that the judgment of expulsion did not bar an action on the certificate, though the beneficiary in the complaint did not set forth the facts of the expulsion and ask for the annulment of the judgment of expulsion.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1996–1998; Dec. Dig. § 815.\*]

John M. Kellogg, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Mary Clara Wilcox against the Supreme Council of the Royal Arcanum. From an order of the Special Term (66 Misc. Rep. 253, 123 N. Y. Supp. 83) setting aside a verdict for plaintiff, she appeals. Reversed, and verdict reinstated.

See, also, 132 N. Y. Supp. 1150.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Hancock, Hogan & Hancock (Stewart F. Hancock, of counsel), for appellant.

Howard C. Wiggins, for respondent.

BETTS, J. The opinion of the trial judge in this case is reported in 66 Misc. Rep. 253, 123 N. Y. Supp. 83. It probably sets forth a sufficient statement of the facts herein, and reference is made thereto.

The husband of the plaintiff had been a member of the Royal Arcanum. That order had attempted to expel him. The trial judge held that Frank Z. Wilcox was not tried by a tribunal properly constituted for the trial of such charges, and that the tribunal selected could not properly try him. With that holding of his I agree fully, and for the very excellent reasons which he gives for such holding.

He, however, holds further that its action was not void but voidable and could not be attacked collaterally in this proceeding, and that it must stand until it is set aside in a proper proceeding for that purpose. Hence he set the verdict aside. With this second determination of the learned trial judge I do not agree.

The plaintiff's husband was given a benefit certificate upon which this action was brought. This certificate was never surrendered and

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remained in the possession of said Frank Z. Wilcox or the beneficiary thereof, his wife, this plaintiff, until the time of trial.

In my opinion, if Frank Z. Wilcox did not have a legal and fair trial, was not properly expelled from this order, legally expelled from this order, this certificate is good, he died a member of the order, and a recovery can be had in this action by the beneficiary therein.

[1, 2] In 1 Freeman on Judgments (4th Ed.) § 145, referring to the disqualification of the judge at common law, it is said:

"While it is well settled by the common law that no judge ought to act where, from interest or from any other cause, he is supposed to be partial to one of the suitors, yet his action in such a case is regarded as an error or irregularity not affecting his jurisdiction, and to be corrected by a vacation or reversal of his judgment, *except in the case of those inferior tribunals from which no appeal or writ of error lies.*"

There was no appeal permitted to Wilcox farther than he did carry his appeal in the order, and, hindered and delayed by the defendant, he died before he could bring to trial his proceeding for mandamus brought to compel his reinstatement. 123 App. Div. 86, 108 N. Y. Supp. 483.

In 23 Cyc. 1095, under the title "Judgments," subdivision e, "Disqualification of Judge," it is said:

"Incompetence of a judge to act in a case, by reason of his interest in the subject-matter, personal or professional, will render the judgment void and open to collateral impeachment."

What constitutes "collateral attack" is defined in the same article on "Judgments" (23 Cyc. 1063) as follows:

"On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral."

In this case Mrs. Wilcox brings her action upon this certificate in her possession issued by the defendant. The defendant answers that her husband was not a member of the order at the time of his death, pleading his trial and expulsion from the order and the judgment thereon of its order. Whereupon the defendant attempts to show that he was regularly tried and regularly expelled in accordance with the rules, regulations, and provisions of the defendant. Then the plaintiff denies that her husband had a legal trial or any trial, or that he was regularly expelled or expelled at all, thus attacking the issue tendered by the defendant and collaterally the trial and judgment effected or attempted by the defendant.

I have not found in this state any authorities directly upon this question, either for or against the contention of the parties here.

In Sanborn v. Fellows, 2 Fost. (22 N. H.) 473, the court said:

"The principle is well settled that, wherever a tribunal possesses qualified and limited powers, authorizing them to act in certain specified cases only, and by special modes of proceeding, and the law has provided no mode by which these proceedings can be revised, there the proceedings may be impeached, collaterally, by showing that the court or magistrates have acted in a case where they have no jurisdiction, or by modes of procedure which they are not authorized to adopt."

A part of the syllabus of the case is as follows:

"Objection may be taken collaterally to the proceedings of any inferior tribunal, where the party grieved has no other remedy."

And see the many cases cited in this particular case.

See, also, Gurnsey v. Edwards, 6 Fost. (26 N. H.) 224, a part of the syllabus of which says:

"Where there is no provision of law by which the proceedings of a tribunal possessing limited and qualified powers can be re-examined, their doings may be inquired into collaterally."

See, also, Smith v. Rice, 11 Mass. 507, where it says:

"If the inferior tribunal proceed in a manner prohibited, or not authorized by law, the proceeding is void."

I think that the principle set forth in these cases and authorities determines this case. Mrs. Wilcox can bring no proceeding to reinstate her husband in the Royal Arcanum. She can bring in that order, under its rules, no direct proceedings to farther review its action. No right of appeal is left or permitted to her. The action for reinstatement brought by her husband abated by his death. 123 App. Div. 86, 108 N. Y. Supp. 483.

In this action the whole proceeding of the attempted trial and expulsion of plaintiff's husband is brought into this court by the defendant, not by the plaintiff. Hence defendant cannot complain if this court, in which it brings its action for determination, review the trial which was had and its determination. I think this court may determine that the trial was illegal, insufficient, and unlawful because the tribunal which defendant had created was an unfair and illegal tribunal to do the work and determine the issues which it sought to determine. The defendant itself brings these matters here. It brings its judgment into this court, and it ought not to be heard to complain, if this court determines that its action was illegal and unlawful and not a sufficient defense to this action.

We have seen from the authorities quoted that, where an opportunity for appeal is not provided for, the judgment relied upon by the opposing party may be attacked collaterally. To hold that this court cannot declare void a judgment of a tribunal like this defendant, which judgment manifestly was unfairly obtained, is to ascribe to the Supreme Court of this state more impotence than I feel constrained to ascribe to it. This court is not thus powerless. The issue is tendered to the plaintiff by the defendant. I think it has been met.

[3] It is not material in this case that the plaintiff did not in her complaint set forth the alleged determination by the defendant and the expulsion of her husband and ask to have such determination annulled, vacated, and set aside, because the whole matter is brought before the court by the defendant, and surely this court can and must determine the sufficiency of the defense alleged. Certainly this court is not bound to·say that anything which is brought in by a defendant and labeled a "judgment" is in fact a judgment and conclusive upon the parties and this court. If it determines that what is tagged a judg-

ment is not a judgment, why should it not say so in the very action in which it is urged as a defense?

It follows therefore that the judgment setting aside the verdict of the jury should be reversed, and the verdict of the jury reinstated, with judgment thereon for the plaintiff with costs and disbursements. See Code of Civil Procedure, § 1187; Faith v. New York Central & H. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186; Herman v. Fitzgibbons Boiler Co., 136 App. Div. 286, 120 N. Y. Supp. 1074.

JOHN M. KELLOGG, J. (dissenting).   Wilcox did not deny that he made the utterances charged against him.   They were clearly proven, and he stated before the committee:

"What I have said of the Supreme Council I fully and freely admit.   I retract nothing and make no apology for any word I have ever uttered regarding them."

The language used in the publication clearly justifies his conviction, and no other result was possible upon any fair consideration of the case.   The committee was not to try the truth of the charges made by the accused member, but was to determine whether he uttered them.   He was guilty of a breach of the laws of the order, and liable to expulsion without regard to the falsity or truth of the statements made.   The committee was charged with the duty of determining whether a brother had or had not made the utterances, and it cannot be suggested how they were interested in determining that Wilcox made the utterances if he did not.   The good name and welfare of the order would be promoted by having it determined that the utterances were not made by a brother.   The justice of the conviction cannot be questioned; the only question raised is that the committee were without jurisdiction to try him because the utterances, if made, referred to them and their associates.   The committee had no disqualifying interest against the accused.

By the laws of the order, in a case of this kind, the charges are preferred by the Supreme Council itself, if in session; otherwise by the Supreme Regent, and are preferred in the name of the Council, and are to be tried by a committee appointed by the Council or by the Regent preferring the charges, which committee, "if practicable," shall be members of the Grand or Supreme Council.   Certain members, by the laws of the order, are declared disqualified to act on such committees.   It is fairly inferable that those not so declared disqualified may serve.   The plaintiff, with equal force, might raise objection to the qualification of the Grand Council or the Supreme Regent to appoint the committee, as the utterances related to them.   Any member might accuse all of the other members, or the order itself, of the gravest crimes, and he could not be removed.   The laws of the order would break down if given that construction.   The wisdom of the laws of the order is not in question; the only question is as to their meaning.

The charges grew out of the action of the Supreme Council in increasing the dues or assessments of members.   It was a question that

was of interest to every member of the order. Evidently every member was financially interested in the question. We may assume that the interest of any member would be sufficient to disqualify him ·as a juror upon a trial in a court of justice where that question was involved. The laws of the order ignore that rule, and even require that the counsel of the accused must be a member of the order. Every member of the order is interested in it, in its good name, and in the maintenance of its discipline. But every person accused of injuring the order, its good name, or violating its discipline, must be tried before members of the order. The members are not interested in condemning the accused; they are only interested in maintaining discipline, and the question to be tried is whether the accused has violated the fraternal laws. The members are not interested for or against the accused, but in the common welfare, and the laws contemplate that the members themselves are the proper persons to determine whether a brother has violated the laws to such an extent that he thereby becomes unworthy of continuing that relation.

We need not say that it would be proper, if the slander related to three men only, that those three men should be selected as the triers. But here the slander is uttered against all the members of the body which would naturally be triers, and was a question affecting the existence and stability of the order itself, and interested all. It cannot be said as matter of law that the committee had no jurisdiction to hear the case. The accused had the trial contemplated by the laws of the order, and appealed under such laws to the highest authority in the order and was expelled by virtue of the laws of the order.

In Moore v. National Council of Knights & Ladies of Security, 65 Kan. 452, 70 Pac. 352, a similar prohibition existed against the issuing of circulars relating to the society, or abusing its officers; it being provided that a party violating the rule might be suspended at the discretion of the National Council or executive committee. The accused charged the national officers, in general language, with various offenses, and insisted that the executive committee could not try him because they were interested, as they were the parties attacked. The court held the member properly suspended by the executive committee, saying:

"We think the executive committee had a clear right to inquire into these unauthorized proceedings. It was not investigating the truth or falsity of the charges made by the plaintiff in error. Their truth was not a justification for him. If he desired an investigation, he should have followed the law, not nullified it."

In answer to the suggestion that the member had a property right of which he was being deprived, the court said:

"The right to be free from discipline is not, however, a property right, and discipline may proceed to the point of suspension or expulsion from the order, even though such disciplinary measures result in the forfeiture of the rights of the expelled member. Beyond this, due proceedings, based upon proper by-laws of a voluntary association, constitute due process of law as to members of such an association."

That case seems to be a direct authority upon the questions involved here. Furthermore this is not a proceeding to review the judgment

removing the member, but is a proceeding alleging that the removal itself was void. The proceeding having been taken according to the letter and the spirit of the laws of the order, the determination is binding until it is set aside by direct attack. It cannot be disregarded and destroyed by this collateral attack. I favor an affirmance.